**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

GARY SHANE PRUITT,

                      **Plaintiff,**

-vs-

GROSSE POINTE PUBLIC SCHOOL
SYSTEM; GROSSE POINTE PUBLIC
SCHOOL SYSTEM BOARD OF
EDUCATION;  JASON WESLEY,
individually and in his official capacity
as Principal of Parcells Middle School;
ROY BISHOP, JR., individually and in
his official capacity as Interim Super-
intendent of the Grosse Pointe Public
School System; and ANDREA TUTTLE,
individually and in her official capacity
as Superintendent of the Grosse Pointe
Public School System; all jointly and
severally,

                    **Defendants.**

_____/

**VERIFIED COMPLAINT**

**FILE NO:**

**JUDGE**

David A. Kallman              (P34200)
Stephen P. Kallman          (P75622)
KALLMAN LEGAL GROUP, PLLC
Attorneys for Plaintiff
5600 W. Mount Hope Hwy.
Lansing, MI  48917
(517) 322-3207
dave@kallmanlegal.com
steve@kallmanlegal.com

KALLMAN LEGAL GROUP, PLLC

1

**NOW COMES** the above-named Plaintiff, **GARY SHANE PRUITT**, by and through his undersigned counsel, and brings this Verified Complaint against the above-named Defendants, their employees, school board, agents, and successors in office, and in support thereof alleges the following upon information and belief:

## INTRODUCTION

1.      "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397 (1989). "Speech may not be banned on the ground that it expresses ideas that offend." *Matal v. Tam*, 137 S.Ct. 1744, 1751 (2017).

2.      A foundational core of our Constitutional Republic is that the State cannot punish citizens for engaging in speech that is protected by the First Amendment. Just as citizens cannot be criminally punished for protected speech, a public school cannot retaliate against or punish speech that falls within the ambit of the First Amendment.

3.      This case seeks to protect and vindicate statutory and fundamental constitutional rights. Plaintiff brings a civil rights action under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, and for other statutory and constitutional violations, challenging Defendants' acts, policies, practices, customs, and procedures, which deprived Plaintiff of his rights.

2

4.      As set forth in this Complaint, the actions, policies, practices, customs, and procedures of Defendants were the cause of, and the moving force behind, the statutory and constitutional violations in this case.

5.      Plaintiff brings this action not only for money damages, but also for these express purposes:

A. to immediately rescind the unconstitutional "no trespass" order issued by Defendants against Plaintiff.

B. for preliminary and permanent injunctions enjoining Defendants from enforcing their "no trespass" order and to remove his photograph and all statements posted about him at the school.

C. for a declaration that Defendants' actions were unconstitutional and violate clearly established laws;

D. for a complete expungement of any reference to a no trespass order, and any events related to that action, from school records and any student files;

E. for changes to the policies and procedures of the School District so that no other parents are punished for engaging in protected free speech; and

F. for an award of Plaintiff's reasonable costs of litigation, including attorneys' fees and costs, pursuant to 42 U.S.C. §1988 and other laws.

## JURISDICTION AND VENUE

6.      This action arises under the Constitution and laws of the United States. Jurisdiction is conferred on this Honorable Court pursuant to 28 U.S.C. § 1331 and 1343, and 42 U.S.C. § 1983, 1985, 1986, and 1988, and other Federal and State laws and regulations, to redress violations of federal statutes and state law.

3

7.      This Honorable Court has jurisdiction pursuant to Article III of the United States Constitution, 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(1), (2), (3), and (4). Declaratory relief is authorized pursuant to 28 U.S.C. § 2201 and 2202.

8.      This Honorable Court has supplemental jurisdiction regarding the remaining state claims pursuant to 28 U.S.C. § 1367 because the state claims arise out of the same nexus of facts and events.

9.      Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. § 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Honorable Court.

10.     Plaintiff's claims for damages are authorized under 42 U.S.C. § 1983, 42 U.S.C. § 2000d-7, and by the general legal and equitable powers of this Honorable Court.

11.     Venue is proper under 28 U.S.C. § 1391(b) because all events giving rise to Plaintiff's claims occurred in Wayne County, Michigan.

## PLAINTIFF

12.     Plaintiff is an individual with minor children enrolled in Defendant's school system, a United States citizen, and a resident of Wayne County, Michigan.

## DEFENDANTS

13.     Defendant Grosse Pointe Public School System (hereinafter GPPS) is a public-school system within Wayne County, Michigan, and is the governmental

body responsible for operating GPPS. GPPS operates under the laws of the State of Michigan. Its office is located at 20601 Morningside, Grosse Pointe Woods, Michigan 48236.

14. Defendant GPPS Board of Education is the body responsible for managing the GPPS School District and for adopting, implementing, and enforcing all school policies. It is located within Wayne County, Michigan.

15. Defendant Jason Wesley is the Principal of Parcells Middle School, part of the GPPS system, is a resident of Michigan, and is a defendant in his individual and official capacities.

16. Defendant Roy Bishop, Jr., was the Interim Superintendent of GPPS and is now the Superintendent of GPPS, is a resident of Michigan, and is a defendant in his individual and official capacities.

17. Defendant Andrea Tuttle was the Superintendent of GPPS at all relevant times herein, is a resident of Michigan, and is a defendant in her individual and official capacities.

## STATEMENT OF FACTS

18. Mr. Pruitt attended a "back to school night" at Parcells Middle School on or about September 3, 2024 regarding his minor child.

19. Mr. Pruitt observed many rainbow/transgender pride flags on display at the school.

5

20. Mr. Pruitt contacted the middle school principal, Defendant Jason Wesley, to inquire about the flags he had observed at the middle school and what was being taught to students.

21. He was instructed to contact Defendant Roy Bishop, Jr., then Interim Superintendent of GPPS.

22. Mr. Pruitt spoke to Defendant Bishop to inquire about what he observed and what was being taught to students at GPPS.

23. He was told by Defendant Bishop that nothing was likely to change and was further instructed he could contact the school board.

24. He then contacted Defendant School Board member, Valerie St. John, on September 16, 2024, about what he observed (Exhibit A).

25. Ms. St. John responded that same day and stated, in part, ". . . if you are concerned that your child is seeing the colors of the rainbow, I would suggest sending them with tinted sunglasses so they aren't subjected to the full spectrum." (Exhibit A).

26. Ms. St. John then affirmed, in agreement with Defendants Wesley and Bishop, "that nothing is likely to change." (Exhibit A).

27. This case arises because of a video posted by Mr. Pruitt on a parent Facebook page on October 14, 2024, that truthfully displayed what he observed at

Defendants' middle school when he visited the school on September 30, 2024.[1]

28.     Mr. Pruitt further provided a voiceover commentary to the video with his constitutionally protected speech and political opinion regarding the video.

29.     He obtained permission from school personnel in the office at Parcells Middle School to enter the school building after school hours on September 30, 2024, and he simply videotaped the flags that were on display at the school in various classrooms and hallways.

30.     Children had already been released from school for the day and the hallways and classrooms were essentially empty.

31.     A few teachers and individuals were present as he walked around, however, he obscured their identity in the video, and there was no way to identify any of the individuals in the video.

32.     Mr. Pruitt provided his own voiceover of the video footage and expressed his constitutionally protected speech and criticized the Defendants over what he observed and his thoughts on those political issues.

33.     He did not name in the video any individual he encountered during his time at the middle school.

34.     On October 15, 2024, Defendant Wesley sent an email letter regarding the video to all parents with children at Parcells Middle School (Exhibit B).

---

[1] The Video can be viewed at: https://tinyurl.com/5n7z2726

7

35.     Defendant Wesley's email did not allege that there had been any actual disruption of school activities resulting from the posted video.

36.     Defendant Wesley admitted in the email:

a.     "The video did not contain any threatening content."
b.     That Mr. Pruitt's speech "was political in nature, as expressed by a parent."
c.     That Mr. Pruitt's video "was recorded by a parent after dismissal" of students for the day.
d.     "We value your input and want to ensure that all voices are heard."

37.     Despite Defendant Wesley's admission that the video did not threaten anyone and was simply an appropriate expression of protected political speech, he then informed all the parents that, in response to Mr. Pruitt's posting, "we will have an increased police presence at the start of the school day at Parcells," implying that Mr. Pruitt was somehow a threat to students and staff at the middle school.

38.     Mr. Pruitt responded to Defendant Wesley's email that same day affirming that he had not threatened physical violence or harm to anyone and would continue to speak out on issues of concern to him as a parent (Exhibit C).

39.     Mr. Pruitt was then personally served by the Grosse Pointe Police Department with a letter (dated October 21, 2024) from Defendant's school attorney that, "at the direction of the Superintendent [Defendant Andrea Tuttle] pursuant to Board Policy 8.07" and for the reasons stated in the letter, he was issued a "no trespass" order and was barred from entering onto school property until further notice (Exhibit D).

8

40.     Mr. Pruitt did nothing on the school grounds or campus that violated the cited policy, he did not use school property in any way, he did not cause any disruption while at the school, he did not harass, argue with, or intimidate anyone at the school, nor were there any school functions recorded.

41.     Mr. Pruitt never threatened or harassed any named person with his commentary and video that was posted on Facebook.

42.     The letter threatened Mr. Pruitt with criminal prosecution if he failed to comply with Defendants' "no trespass" order.

43.     Defendants further retaliated, alienated, humiliated, and stigmatized Mr. Pruitt by publicly posting his photograph in the middle school office and publicly stating in writing that he was a trespasser and not allowed on school property.

44.     As a result of the posting of his picture and the statement, his child was stigmatized, ridiculed, and harassed by other children and individuals at the school.

45.     Other parents, students, and community members were able to observe and see the posting of his photograph and the statement at the school office in an attempt to publicly shame him for exercising his constitutionally protected free speech rights.

46.     The clear purpose and intent of Defendants' actions described above was to intimidate Mr. Pruitt and others and to chill their speech if they disagreed

with any action by GPPS.

47.     Upon information and belief, his photograph and the statement continue to be posted in the middle school office.

48.     Mr. Pruitt attempted to have the "no trespass" order lifted without the need for litigation in a letter to Defendants' counsel on January 16, 2026 (Exhibit E).

49.     Even though nothing improper happened either prior to, or after, the "no trespass" order that was issued on October 21, 2024, Defendants still refuse to lift the "no trespass" order and vindictively continue to retaliate and punish Mr. Pruitt for his speech and are continuing to keep his picture publicly posted in the school office.

50.     After agreeing to an extension of time for Defendants to respond to his letter, he received no response to his reasonable attempt to resolve the matter.

51.     The "no trespass" order is still in full force and effect as of the date of the filing of this complaint.

**GENERAL ALLEGATIONS**
**SCHOOL POLICIES/STATE STATUTES**

52.     Defendants' claim to derive their authority to take the actions described above based upon school policy (Policy 8.07) and state law (MCL 380.11a(3)(a)-(b)) (Exhibit D).

53.     MCL 380.11a(3)(a)-(b) states:

10

KALLMAN LEGAL GROUP, PLLC

(3) A general powers school district has all of the rights, powers, and duties expressly stated in this act; may exercise a power implied or incident to a power expressly stated in this act; and, except as otherwise provided by law, may exercise a power incidental or appropriate to the performance of a function related to operation of a public school and the provision of public education services in the interests of public elementary and secondary education in the school district, including, but not limited to, all of the following:

(a) Educating pupils. In addition to educating pupils in grades K-12, this function may include operation of preschool, lifelong education, adult education, community education, training, enrichment, and recreation programs for other persons. A school district may do either or both of the following: (i) Educate pupils by directly operating 1 or more public schools on its own. (ii) Cause public education services to be provided for pupils of the school district through an agreement, contract, or other cooperative agreement with another public entity, including, but not limited to, another school district or an intermediate school district.

(b) Providing for the safety and welfare of pupils while at school or a school sponsored activity or while en route to or from school or a school sponsored activity.

54.    Defendants only have the authority under these cited sections to adopt and enforce policies that provide for "educating pupils" and to provide "for the safety and welfare of pupils while at school or a school sponsored activity or while en route to or from school or a school sponsored activity."

55.    Nothing in MCL 380.11a(3)(b) grants any authority to Defendants to police or punish speech or the free expression of parents with which it disagrees and

11

that does not occur "at school or a school sponsored activity or while en route to or from school or a school sponsored activity."

56. Therefore, Defendants' improper actions to punish speech that does not occur "at school" are unlawful, especially because his protected speech was online on a Facebook page for parents and the public.

57. Defendants further failed to allege any facts to show that Mr. Pruitt's Facebook posting violated MCL 380.11a(3)(a) by interfering in any way with the education of students at GPPS. No students were present and no classes were occurring when he visited the school after hours.

58. Defendant Wesley admitted there was no disruption at the school and no threat was made against the school as a result of the posting of the video on Facebook (Exhibit B).

59. Therefore, Mr. Pruitt did not violate MCL 380.11a(3)(a) or (b) and this statute gives no authority to Defendants to support their retaliatory actions taken against him.

60. Defendants' further cited GPPS Policy 8.07 regarding School Visitors which states:

> The District encourages visits to school by parents, other adult community residents, or other educators, so long as those visits do not disrupt or otherwise interfere with the educational process. Any such visit shall be arranged in advance with the building administration. The Superintendent and the building principal or designee have

12

the authority to prohibit entry to a school building of any person, or to expel any person, if there is reason to believe that such person's presence would be detrimental to the educational process or the good order of the school. The Superintendent shall develop administrative guidelines specifying the procedures that permit reasonable attendance by visitors but that protect the educational environment.

61. Mr. Pruitt did not violate this policy as he properly obtained prior approval from school personnel for his school visit on September 30, 2024.

62. Policy 8.07, which actually "encourages visits to school by parents," gives no authority to Defendants for the issuance of a "no trespass" order against Mr. Pruitt.

63. Mr. Pruitt did not cause a disruption at the school or take any action "detrimental to the educational process or the good order of the school."

64. Again, his visit was after class hours, students had gone home for the day, no classes were occurring, and he did not interfere with or disrupt any school activity or educational process.

65. Therefore, Mr. Pruitt did not violate GPPS Policy 8.07, and this policy gives no authority to Defendants to support their retaliatory action taken against Mr. Pruitt.

66. Nothing in the above statute or policy grants any authority to Defendants to police or punish constitutionally protected speech or expression by parents with which Defendants disagree and that does not occur "at school."

13

67. Defendants further ignore other GPPS policies which were violated by Defendants when it issued the "no trespass" order against Mr. Pruitt.

68. GPPS Policy 3.02 encourages parental involvement at the school and states, "Parents and families are also encouraged to visit their child's school and participate in school activities."

69. GPPS Policy 3.02 further states:

> Effective Means of Communication, by facilitating open and ongoing communication between home and school; providing information and resources to families regarding safety, proper health and wellbeing; ensuring accessibility to information about District programs and policies; providing accurate and timely information regarding State and local academic standards and assessments; and engaging families in monitoring student growth and progress reports.

70. Defendants' actions did not facilitate "open and ongoing communication" between Mr. Pruitt and GPPS, rather, Defendants' actions chilled and punished his communications to Defendant, other parents, and the public.

71. Defendants' actions did not ensure "accessibility to information about District programs and policies," rather, Defendants attempted to retaliate and punish Mr. Pruitt for properly attempting to access information about GPPS' programs.

72. For all the above stated reasons, Defendants violated GPPS Policy 3.02.

73. GPPS Policy 3.16 states:

> The Superintendent shall develop regulations that provide an opportunity for the presentation and fair consideration

KALLMAN LEGAL GROUP, PLLC

of parental objections to the School District's curriculum, the selection of textbooks and other instructional materials and media center materials.

74. Defendants failed to follow any regulations to properly address Mr. Pruitt's objections in this matter, as required by Policy 3.16.

75. Defendants simply summarily dismissed his publicly posted concerns and improperly punished him for even questioning GPPS' actions, all in violation of Policy 3.16.

76. GPPS Policy 8.01 states:

The Board recognizes and affirms the right of citizens to be regularly informed and to be able to obtain information about the objectives, conditions and achievements of the District.

77. Defendants violated Mr. Pruitt's rights under this policy by retaliating and punishing him for attempting "to be regularly informed and to be able to obtain information about the objectives and conditions" of GPPS.

78. GPPS Policy 8.04 states:

The Superintendent shall issue administrative guidelines identifying procedures for investigating and responding to complaints by members of the  public  against the District . . .

79. Defendants violated Mr. Pruitt's rights under this policy by failing to follow any guidelines and procedures to address Mr. Pruitt's complaint.

80. Defendants' actions set forth above all constitute violations of Mr.

15

Pruitt's rights under the Constitution, state law, and pursuant to the stated policies.

## COUNT I – FIRST AMENDMENT VIOLATIONS
### 42 U.S.C § 1983
#### AGAINST ALL DEFENDANTS

81.     Mr. Pruitt hereby incorporates by reference all the above paragraphs as if fully restated herein.

82.     Mr. Pruitt's political speech is protected by the First Amendment to the United States Constitution.

83.     Defendants retaliated against Mr. Pruitt's exercise of his First Amendment right to free speech.

84.     Mr. Pruitt hereby alleges that:

(1) He engaged in constitutionally protected speech,
(2) Defendants took adverse actions against him that caused him to suffer an injury that chilled a person of ordinary firmness from continuing that activity, and
(3) Defendants' actions were motivated, at least in part, by the exercise of his constitutional rights.

85.     While Defendants may disagree with Plaintiff's speech, none of Plaintiff's speech amounted to a true threat, it was not obscene or defamatory, and did not pose a safety risk to the school.

86.     No disruption occurred in the school environment from Plaintiff's speech.

87. Defendants did not have a constitutionally justified reason, nor legal authority, to punish Mr. Pruitt for the content of his constitutionally protected speech.

88. Defendants are "persons" under 42 U.S.C § 1983.

89. Defendants acted intentionally and under the color of state law, thereby violating Plaintiff's clearly established constitutional rights by illegally retaliating and punishing Mr. Pruitt for his protected speech. This constitutes a violation pursuant to 42 U.S.C § 1983.

90. Defendants acted with reckless, wanton, or callous indifference to Mr. Pruitt's protected constitutional rights.

91. Defendants knew, or should have known, that Mr. Pruitt's speech was a clearly protected constitutional right.

92. Defendants violated Plaintiff's rights by issuing the "no trespass" order to retaliate and punish him because of his speech.

93. Defendants' actions described above are in direct conflict with Plaintiff's First Amendment rights and are a custom, pattern, and practice of Defendants in violation of 42 U.S.C § 1983.

94. Defendants' actions force all parents to curtail their speech and expression in a manner prohibited by the First Amendment.

KALLMAN LEGAL GROUP, PLLC

95. Defendants failed to properly train, hire, and/or supervise its school officials regarding the proper policies, procedures, and limitations on parental speech, including the need to protect a parent's First Amendment rights.

96. Defendants' failure to properly hire, train, and/or supervise its school officials was a moving force behind the constitutional violations alleged herein and was a direct and proximate cause of Mr. Pruitt's injuries.

97. As a direct and proximate result of the acts and omissions of Defendants, Mr. Pruitt suffered mental anguish, damage to his reputation, and suffered adverse consequences socially, educationally, and vocationally in an amount to be proven at trial.

98. Defendants' actions violated Plaintiff's clearly-established constitutional rights and were objectively unreasonable.

99. Punitive damages are available against the individual Defendants and are hereby claimed as a matter of federal common law, *Smith v. Wade*, 461 U.S. 30 (1983).

100. Plaintiff is entitled to recovery of his costs and expenses, including reasonable attorney fees incurred, pursuant to 42 U.S.C. § 1988.

101. Mr. Pruitt is entitled to preliminary and permanent injunctions prohibiting further violations of his First Amendment rights, to stop continued

enforcement of the "no trespass" order against him, and to have his photograph and other defamatory statements about him at the school removed.

102. Mr. Pruitt is entitled to injunctive relief ordering the immediate rescission of the "no trespass" order to allow him to attend school events and activities.

103. Defendants are not entitled to qualified immunity because they violated a clearly established right of Mr. Pruitt for all the reasons stated above. See *McElhaney v. Williams, et. al.*, 81 F4th 550 (6th Cir. 2023).

### COUNT II - MICHIGAN CONSTITUTIONAL VIOLATIONS AGAINST ALL DEFENDANTS

104. Mr. Pruitt hereby incorporates by reference all the above paragraphs as if fully restated herein.

105. By reason of the aforementioned acts, policies, practices, customs and procedures created, adopted, and enforced under color of state law, Defendants deprived Mr. Pruitt of his rights under Article I, § 5 of the Michigan Constitution of 1963.

106. Defendants' improper enforcement of the above-mentioned policies/statutes for all the reasons as stated above denied Mr. Pruitt his constitutional right to "freely speak, write, express and publish his views on all subjects" and restrains and abridges his liberty of speech.

107. In particular, Defendants' actions violated Plaintiff's free speech rights

19

as they punished him for speech which did not occur at school, or at any school related function or activity, and did not disrupt any educational process.

108. The School District's training, supervision, policies, practices, customs, and procedures, punished and retaliated against Mr. Pruitt for expression that Defendants did not approve of and apparently believed to be offensive.

109. Defendants' actions injured Plaintiff by infringing on his free speech and due process rights through their "no trespass" order against Plaintiff, for posting his photograph at school and making defamatory statements about him, and for failure to comply with its own policies and state law.

110. As a direct and proximate result of Defendants' violation of the state constitutional provisions specified above, Plaintiff has suffered, is suffering, and will continue to suffer, irreparable harm, including the loss of his fundamental constitutional rights, entitling him to declaratory and injunctive relief.

111. As a direct and proximate result of the acts and omissions of Defendants, Mr. Pruitt suffered mental anguish, damage to his reputation, and suffered adverse consequences in an amount to be proven at trial.

112. Mr. Pruitt is entitled to preliminary and permanent injunctions prohibiting further enforcement of the "no trespass" order, continuing to post his photograph and make defamatory statements about him, and continuing to violate his state constitutional rights.

113. Defendants' actions violated Plaintiff's clearly-established rights and were objectively unreasonable.

114. Mr. Pruitt is entitled to injunctive relief ordering the immediate rescission of the "no trespass" order to allow him to attend school events and activities, and for the removal of his photograph and other statements at the school.

115. Defendants are not entitled to qualified immunity because they violated a clearly established right of Mr. Pruitt for all the reasons stated above. See *McElhaney v. Williams, et. al.*, 81 F4th 550 (6th Cir. 2023).

### COUNT III - DEFAMATION
### AGAINST ALL DEFENDANTS

116. Mr. Pruitt hereby incorporates by reference all the above paragraphs as if fully restated herein.

117. Defendants falsely portrayed Mr. Pruitt in a negative manner by issuing a "no trespass" order and by posting his photograph in Defendants' middle school office with a statement inferring he was a dangerous person because of the "no trespass" order improperly issued against him.

118. This false portrayal of Mr. Pruitt has been continuously displayed in Defendants' middle school since October of 2024.

119. Defendants published this false portrayal publicly and it could be seen by anyone entering the school office.

120. Defendants' accusations that Mr. Pruitt disrupted the school

21

environment, harassed or intimidated school employees, or committed any of the other actions alleged in its letter dated October 21, 2024, are false.

121. Defendants published this false portrayal knowing it was false, or with reckless disregard of its falsity.

122. Defendants' publication was not privileged.

123. Mr. Pruitt requested that the "no trespass" order be rescinded and that the photograph and posting be taken down and Defendants failed and refused to do so, thereby continuing their defamation and harassment of Plaintiff.

124. Defendants' publication of this false portrayal and statement resulted in damage to Mr. Pruitt's reputation in the community and has caused economic loss and damages, including emotional distress, humiliation, mortification, embarrassment, and damage to his good name and reputation, sleeplessness and anxiety, and other damages as may arise during the course of discovery in this matter.

125. Defendants' false portrayal and statement is defamation per se.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff requests this Honorable Court:

A.      declare that Defendants' actions in this case are unconstitutional and that Defendants violated Plaintiff's fundamental constitutional rights;

B.      declare and make a finding that Defendants acted outside the scope of their authority;

C.      issue preliminary and permanent injunctions immediately rescinding the "no trespass" order, enjoining any future enforcement of said order, and allow him to attend school events and activities;

D.      remove his photograph and all defamatory statements regarding him from school property;

E.      fully expunging any record of this "no trespass" order and incident from Defendants' records, transcripts, and files;

F.      award Plaintiff compensatory and punitive damages against all Defendants for their federal and state constitutional violations;

G.      award Plaintiff his reasonable attorney fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and other applicable law;

H.      enter a judgment in his favor for damages owed for Defendants' defamation of Plaintiff, plus interest and other fees, including his costs, expenses, and attorney fees incurred in having to bring the defamation claim; and

23

I. grant such other and further relief as is just and appropriate.

**I HEREBY STATE AND AFFIRM THAT I HAVE READ THE FOREGOING VERIFIED COMPLAINT AND THAT IT IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION, KNOWLEDGE AND BELIEF.**

Respectfully submitted,

DATED: March 23, 2026.

_____
Gary Shane Pruitt, Plaintiff

Prepared By:

David A. Kallman (P34200)
Attorney for Plaintiff

24

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial in this matter.


DATED: March 23, 2026.

/s/ *David A. Kallman*
By:  David A. Kallman          (P34200)
Attorney for Plaintiff
5600 W. Mount Hope Hwy.
Lansing, MI 48917
517-322-3207
dave@kallmanlegal.com

KALLMAN LEGAL GROUP, PLLC

25