# EXHIBIT A

On Mon, Sep 16, 2024 at 2:23 AM 'pruittent' via Schoolboard Email
<schoolboard@gpschools.org> wrote:

Hello,

My name is Shane Pruitt.

I recently spoke with the principal at Parcells (Mr. Wesley), as well as Dr. Bishop about my concern over the forced acceptance of homosexual symbols (rainbow flags) in the Grosse Pointe School classrooms.

In short, I was told there would not be much done about it.

So I thought that I would reach out to the board and see if there were any options that might be considered?

I have ZERO plans on dropping the issue as I have spoken with dozens of parents in the school district who also find it completely unacceptable that adults are trying to indoctrinate children with these symbols of homosexuality.

Sent from my Verizon, Samsung Galaxy smartphone

-------- Original message --------
From: "Valarie St. John" <stjohnv@gpschools.org>
Date: 9/16/24 4:41 PM (GMT-05:00)
To: pruittent <pruittent@aol.com>
Subject: Re: Concerned parent

Dear Ms. Pruitt,

Thank you for taking the time to write to the board. I can assure you that none of our teachers have been forced to hang rainbow flags in their classrooms. If any teacher is indoctrinating children into any sexual orientation, please report that to the principal, as that would be inappropriate. However, if you are simply concerned that your child is seeing the colors of the rainbow, I would suggest sending them with tinted sunglasses so they aren't subjected to the full spectrum.

Michigan law requires that we protect our LGBTQ+ students, so Mr. Wesley and Dr. Bishop were correct that nothing is likely to change. The board cannot overrule state law.

Have a great week,

Valarie St. John
(she/her/hers)
GPPSS Board of Education trustee

# EXHIBIT B

-------- Original message --------
From: Lisa Sicklesteel <sicklel@gpschools.org>
Date: 10/15/24 7:30 AM (GMT-05:00)
To: pruittent@aol.com
Subject: Parcells Matter to Bring to your Attention

Dear Parents,

We want to bring to your attention that a video has recently been circulating on Facebook, and we are aware of the concerns it may raise within our community. The video did not contain any threatening content; rather it was political in nature, as expressed by a parent. Please be assured that we are actively investigating the situation in collaboration with our central office and district officer to determine the appropriate steps to take.

The video in question was recorded by a parent after dismissal, and we understand that it may prompt questions or concerns about our school environment. Our top priority is the safety and well-being of our students, and we are committed to addressing any issues that arise from this incident.

As we work through this matter, we encourage an open line of communication. If you have any questions or concerns, please do not hesitate to reach out to us. We value your input and want to ensure that all voices are heard.

Our aim is to ensure a safe, supportive, and positive environment for all our students and families. As a result, we will have an increased police presence at the start of the day at Parcells.

Thank you for your understanding and support as we navigate this issue together. Your partnership is invaluable to us.

**Jason Wesley, Ed.S.**

**Princpal**
**Parcells Middle School**
**20600 Mack Avenue**
**Grosse Pointe Woods, MI 48236**
**"At Parcells we are positively putting our paws on education."**

You are receiving this email because of your relationship with Parcells Middle School. If you wish to stop receiving email updates sent through the Finalsite service, please **unsubscribe**.
Parcells Middle School | 20600 Mack Ave., Grosse Pointe Woods, MI 48236 | 313-432-4600

# EXHIBIT C

From: pruittent@aol.com
To: sicklel@gpschools.org
Sent: 10/15/2024 9:03:33 AM Eastern Daylight Time
Subject: RE: Parcells Matter to Bring to your Attention

It's called peaceful protest.

When the school district is dismissive of parents concerns we have every right to voice our opinion.

No one is threatening physical violence or harm to anyone what so ever... but we will state our opinion on the matter.

If the school district wants to continue to promote a divisive environment for children to be forced to learn in, then get used to the opposition. 🤷

I brought my concern to you, Dr. Bishop and the school board... To which (in the most dismissive, sarcastic way ever) board member Ms. St. John told me to send my kid to school in "sunglasses if I was afraid of him seeing the rainbow"... Definitely not an expression of inclusion.

Not all parents are on board with the indoctrination, and we will continue to speak our mind on it.

Shane Pruitt

Sent from my Verizon, Samsung Galaxy smartphone

# EXHIBIT D

# COLLINS & BLAHA, P.C.

## ATTORNEYS AT LAW

GARY J. COLLINS
WILLIAM J. BLAHA
LORIE E. STEINHAUER†
AMBERLY ACUFF BRENNAN
JOHN C. KAVA
JEREMY D. CHISHOLM
DAVID A. COMSA
JORDAN M. HARRIS
JULIA M. MELKIC
ETHAN P. SCHULTZ
DARIA S. MAJEWSKI

†ALSO ADMITTED IN
THE DISTRICT OF COLUMBIA

**SUITE 170**
**31440 NORTHWESTERN HIGHWAY**
**FARMINGTON HILLS, MICHIGAN 48334**

TELEPHONE 248/406-1140
FACSIMILE 248/406-8416

October 21, 2024

SHELBY C. MILLER
ALEXANDER S. LINDAMOOD
MADDISON M. MOSER
GABRIELLE G. SHARAK
ADAM J. SOCHACKI

OF COUNSEL
ROBERT J. GAVIN
DONALD P. DeNAULT, JR.
PAUL H. SCOTT

Gary S. Pruitt
1427 Hampton
Grosse Pointe Woods 48236

Re:   **No Trespass Order**

Dear Mr. Pruitt:

Please be advised that our law firm represents the Grosse Pointe Public Schools System (the "District"). On behalf of the District, and at the direction of the Superintendent pursuant to Board Policy 8.07 – School Visitors, this correspondence constitutes a "no trespass" order to you based upon the facts and considerations outlined further below.

On or about September 30, 2024, you entered a Grosse Pointe Public Schools (the "District") building at Parcells Middle School. While at the school, you filmed the inside of a classroom and a staff member sitting at her desk and posted the resulting video to the "Grosse Pointe Public Schools Concerned Parents" Facebook page. In the video, you maintain a voiceover narrative where you ask: "[d]o you want to continue to let these groomer teachers push their distorted world view upon your children?" You also walked by and into the same teacher's classroom on at least two more occasions while you were in the building. Your actions intimidated the teacher, who was uncomfortable with your actions. Additionally, you walked the entire building and recorded a second teachers' classroom in the basement.

Under the District's Board Policies and Administrative Guidelines, visitors shall schedule a visit with the teacher and the building principal before entering the classroom, as unscheduled visits are not advised. Administrative Guideline 8.07 – School Visitors. Additionally, District policy states that school visitors shall refrain from evaluating personnel. In your Facebook post, you evaluate the teacher's classroom organization and management methods. Pursuant to Board Policy, if a visitor's presence is detrimental to the educational process of the classroom, the Superintendent or building principal has the authority to prohibit or remove them from the school building. Board Policy 8.07 – School Visitors. Additionally, the accusations that the District's teachers are "groomer[s]" may be considered defamatory and a harassment of staff.

The District has received complaints from District staff and community members related to the publication of your video on Facebook, particularly the "groomer" reference. The complaints allege that your conduct is intimidating, harassing and defamatory. It has caused a substantial

disruption to the educational environment in our District.  Therefore, pursuant to Board Policy and Administrative Guideline 8.07, you are being issued this no trespass order.

Additionally, the Revised School Code authorizes school districts to exercise powers related to educating pupils and providing for the safety and welfare of pupils while at school or a school sponsored activity or while en route to or from school or a school sponsored activity. MCL 380.11a(3)(a)-(b). With regard to educating students, courts have held that school districts may place limits on the exercise of even the most fundamental rights in order to prevent disruption or the forecast of disruption to the educational process. *Tinker v Des Moines Independent Community School District*, 393 US 503, 513 (1969).

With regard to safety and security, courts have found that school districts have an important interest in maintaining the safety and security of school grounds and ensuring the safety of students, staff, parents, and other members of the public who come onto school property. *Ritchie v Coldwater Community Schools*, 947 F Supp 2d 791, 813 n 9 (WD Mich 2013). Courts have also held that the Revised School Code vests broad authority in school districts to adopt policies to ensure the safety and welfare of students. *Liebau v Romeo Community Schools*, unpublished per curiam opinion of the Court of Appeals, issued July 30, 2013 (Docket No 306979), p 5.

The authority afforded to school districts to regulate school property exceeds that of other local governmental entities. There is no fundamental right for members of the public, or even parents, to access school property, particularly when doing so would disrupt the educational process or threaten student safety. Courts have held that a school may ban a person, including a parent, from going onto school property in order to preserve order in the educational process or to protect students from potential harm without violating any fundamental right to go onto or access school property. *Mejia v Holt Public Schools*, unpublished opinion of the United States District Court for the Western District of Michigan, issued March 12, 2002. As the United States District Court for the Western District of Michigan has explained:

> [S]chool officials have broad discretion to limit parent and third-party access to school property in order to ensure student safety and prevent disruptions in the educational process . . . Moreover, citizens do not have an unfettered right of access to school property simply because it is public. [*Ritchie v Coldwater Community Schools*, 947 F Supp 2d 791 (July 11, 2012), p 16 (internal citations omitted).]

The Michigan Attorney General has opined that the protection afforded by the state trespassing law is available to school districts and may be invoked in removing unauthorized visitors from school premises. 1976 OAG 5039. State trespassing law prohibits in pertinent part entering the land or premises of another without lawful authority after having been forbidden to do so by the owner or the agent of the owner; or remaining without lawful authority on the premises of another after being notified to depart by the owner or agent of the owner. MCL 750.552(1)(a)-(b).

The District takes the gravity of your conduct and statements seriously, and to ensure the continued safety of students and staff, **you are hereby notified that you are prohibited under the Michigan Penal Code, MCL 750.552, from entering the lands and premises of District property, including all District classrooms,** other than to pick up or drop off your child from

2

school while remaining in your vehicle – without prior approval from the District. The District staff has been notified to contact the police immediately if you are observed violating this restriction. This prohibition applies at all times and to all District property and extends to all locations where District events are taking place.

Please be advised that if you violate this no trespass order, the appropriate authorities will be contacted, and you may be charged with criminal trespass under MCL 750.552.

The District will consider revisiting this no trespass order with you at a later date for purposes of attendance at sporting events or extracurricular activities, at its sole discretion. Please contact the Superintendent's office in the future should you wish the District to entertain such a request.

Sincerely,

COLLINS & BLAHA P.C.

John C. Kava

3

# EXHIBIT E



**ATTORNEYS AT LAW**

DAVID A. KALLMAN
DAVE@KALLMANLEGAL.COM

STEPHEN P. KALLMAN
STEVE@KALLMANLEGAL.COM

JACK C. JORDAN
JACK@KALLMANLEGAL.COM
*OF COUNSEL*

**January 16, 2026**

*Via First Class Mail and*
*Email to: jkava@collinsblaha.com*

Mr. John C. Kava
Attorney at Law
COLLINS & BLAHA, P.C.
31440 Northwestern Hwy., Ste. 170
Farmington Hills, MI  48334

RE:   Letter to Gary Pruitt dated October 21, 2024
       No Trespass Order

Dear Mr. Kava:

I am writing on behalf of my client, Gary Pruitt, regarding the above referenced letter from you issuing him a "no trespass" order. I am requesting that this order be rescinded immediately for the reasons stated below.

As you are aware, Mr. Pruitt visited the school after hours on September 30, 2024, with the permission of school personnel and walked around the school building. He believed the school district welcomes and encourages visits to school by parents and other community residents.  No classes were ongoing as school had ended for the day. He used his phone to film some empty hallways and classrooms. No disruption of the school day occurred, and no children or teachers were harassed or bothered in any way. There were no children in the classrooms. The teacher who was partially seen in the video was blocked out and not identifiable. Mr. Pruitt did nothing to intimidate or harass anyone at the school. He was not there to "visit" with any teacher and did not engage with any teachers for that purpose. He did not "evaluate" any teacher. He merely later posted his constitutionally protected opinion as to what he saw in the classroom, i.e., the flag on the wall. It was impossible for him to do anything that was "detrimental to the educational process of the classroom" as no classes were in session.

Your claim that student and teacher safety was somehow at risk from Mr. Pruitt calmly walking around after school hours is specious. There are no facts to support such a defamatory claim against Mr. Pruitt. He had permission to be on the premises, he threatened no one, intimidated no one, did not assault anyone, and took absolutely no action to harm anyone's safety. Mr. Pruitt demands that the school district acknowledge he took no actions that were detrimental to the safety of students or teachers. Further, Mr. Pruitt demands that his picture be taken down immediately in the school office and the school retract its defamatory claim that he was a threat to the school.

The video he posted online contains his political opinions and is clearly protected political speech. You may not like his opinions, but they are constitutionally protected statements. If a teacher felt uncomfortable or offended, that is no basis to punish his speech. There can be no defamation as no person was named or identified in the video. Again, Mr. Pruitt's political opinion and criticism of the school is protected speech.

The bedrock principle underlying the 1st Amendment's free speech guarantee is that government "cannot prohibit speech merely because it offends the sensibilities of others." *Higgins v Kentucky Sports Radio, LLC*, 951 F3d 728, 734 (6th Circuit 2019); *Texas v Johnson*, 491 US 460, 468 (2010).

**Pruitt Letter**                                                                                    **Page 2**
**January 16, 2026**

Almost all speech is protected from governmental interference. *Novak v City of Parma*, 932 F3d 421, 427 (6th Circuit 2019). This is especially so when government censorship is based on the views expressed within the speech. *Lamb's Chapel v Ctr. Moriches Union Free Sch. Dist.*, 508 US 384, 393-94 (1993). The right to criticize public officials is safely within that protected speech zone. *Jenkins v Rock Hill Loc. Sch. Dist.*, 523 F3d 580, 588 (6th Circuit 2008).

"School officials may not retaliate against the parent for the content of his speech." *McElhaney v Williams, et. al.*, 81 F4th 550 (6th Circuit 2023). This case is directly on point and controls in this matter. Speech you deem to be disrespectful does not open the door to government retaliation. Parents may criticize school employee actions involving their children. Here, Mr. Pruitt engaged in constitutionally protected speech, you clearly retaliated against Mr. Pruitt because of his speech in an attempt to chill the exercise of his speech, and your actions were clearly motivated by the exercise of his constitutional free speech rights. *Id.* Your actions constitute a clear federal 1983 civil rights violation.

Additionally, your reliance on the *Tinker* "disruption" standard is wholly inapplicable to this matter. The "disruption" analysis only applies to students, not parents.

> Parents, however, have a different relationship to school activities than do students. After all, the school is not acting as a parent's temporary guardian when the parent attends his or her child's extracurricular activity or a parent-teacher conference. As a result, the "disruption" standard applicable to student speech has not been applied to run-of-the-mill adult speech targeting school officials.

*McElhaney, supra* at 558.

MCL 750.552 gives no authority to support the action taken against Mr. Pruitt. This general trespass statute gives you no authority violate his constitutionally protected 1st Amendment free speech rights. Moreover, 1976 OAG 5039 is inapplicable because Mr. Pruitt had your permission to be on the school property. This attorney general opinion also does not override 1st Amendment rights. The unpublished district court decision you cite (*Mejia v Holt Public Schools* (WD Mich 2002)) also fails to provide any protection for your actions in this case. This case did not involve 1st Amendment claims, is not binding precedent, and does not justify your violation of Mr. Pruitt's 1st Amendment rights.

For all the above reasons, Mr. Pruitt demands that the "no trespass" order issued on behalf of the Grosse Pointe School District be rescinded immediately, that the school acknowledge he took no actions that were detrimental to the safety of students or teachers, and that the school immediately remove his picture from the school office (or anywhere else it is posted). While Mr. Pruitt would prefer to resolve this matter without litigation, if your client fails to do so by January 23, 2026, then Mr. Pruitt will pursue the protection of his constitutional rights in federal court.

Thank you for your attention to this letter. If you have any questions, please contact me.

Sincerely,

David A. Kallman
Attorney at Law

DAK/cas
cc:     Gary Pruitt