# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **GARY SHANE PRUITT,** | <u>**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**</u> |
| **Plaintiff,** | |
| **-vs-** | **CASE NO: 26-cv-10958** |
| **GROSSE POINTE PUBLIC SCHOOL SYSTEM; GROSSE POINTE PUBLIC SCHOOL SYSTEM BOARD OF EDUCATION;  JASON WESLEY, individually and in his official capacity as Principal of Parcells Middle School; ROY BISHOP, JR., individually and in his official capacity as Interim Superintendent of the Grosse Pointe Public School System; and ANDREA TUTTLE, individually and in her official capacity as Superintendent of the Grosse Pointe Public School System; all jointly and severally,** | **HON. ROBERT J. WHITE**<br>**MAG. J. ANTHONY PATTI** |
| **Defendants.** | |

/

**David A. Kallman**          (P34200)
**Stephen P. Kallman**        (P75622)
**KALLMAN LEGAL GROUP, PLLC**
**Attorneys for Plaintiff**
**5600 W. Mount Hope Hwy.**
**Lansing, MI  48917**
**(517) 322-3207**
**dave@kallmanlegal.com**
**steve@kallmanlegal.com**

**Michael D. Weaver    (P43985)**
**FLOOD LAW, PLLC**
**Attorneys for Defendants**
**155 W. Congress St., Suite 350**
**Detroit, MI  48226**
**(313) 546-0359**
**mweaver@floodlaw.com**

i

# **TABLE OF CONTENTS**

INDEX OF AUTHORITIES.................................................................................... iii

ARGUMENT ..................................................................................................1

CONCLUSION ................................................................................................8

# INDEX OF AUTHORITIES

**CASES:**

*Bonnell v. Lorenzo*, 241 F.3d 800 (6th Cir. 2001)   .   .   .   .   6

*Counterman v. Colorado*, 600 U.S. 66 (2023)   .   .   .   .   3

*Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507 (2022)   .   .   .   2

*McElhaney v. Williams*, 81 F.4th 550 (6th Cir. 2023)   .   .   .   *passim*

*Moms for Liberty-Wilson Cnty. v. Wilson Cnty. Bd. of Educ.*,
155 F.4th 499 (6th Cir. 2025)   .   .   .   .   .   .   .   7

*Morrison v. Board of Educ. of Boyd County*, 521 F.3d 602 (6th Cir. 2008)   5

*Newsome v. Norris*, 888 F.2d 371 (6th Cir. 1989)   .   .   .   .   6

*Virginia v. Black*, 538 U.S. 343 (2003)   .   .   .   .   .   2

*Watts v. United States*, 394 U.S. 705 (1969)   .   .   .   .   .   3


**STATUTES:**

MCL 750.552   .   .   .   .   .   .   .   .   .   7

## **ARGUMENT**

The contrast between Defendants' contemporaneous account and the manufactured narrative they now advance in litigation could not be more stark. On October 15, 2024, Principal Wesley told every Parcells parent in writing that Mr. Pruitt's video contained "no threatening content," and that his speech "was political in nature, as expressed by a parent." That was the school's real-time assessment, made by the official most familiar with the situation, communicated publicly, before any lawyers were involved. What's more, Defendants offer zero evidence to support their newfound rewriting of the past. Defendants point to nothing Mr. Pruitt actually did that amounted to a true threat.

Now, Defendants ask this Court to accept an entirely different story: that Mr. Pruitt's speech was so dangerous, so threatening, so reminiscent of the mass school shootings that have terrorized this country, that Defendants had no choice but to exclude him from every campus and event, threaten him with criminal prosecution, and post his photograph on school property as a warning. Defendants go so far as to invoke the specter of a parent who "came to the school and harmed children" — casting Mr. Pruitt as a potential mass shooter in all but name. This Honorable Court should be clear-eyed about what this argument is: it is an attempt to retroactively graft a non-existent, violent, true threat justification onto an order that the school's own principal described as a response to disfavored political commentary.

1

The First Amendment does not permit the government to impose a police-backed no-trespass order for viewpoint-based reasons and then, when sued, reconstruct the record with inflammatory post-hoc invocations of school violence. *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 543 n.8 (2022). The gulf between Principal Wesley's contemporaneous statement and what Defendants' lawyers argue today is not a nuance or a matter of emphasis — it is a contradiction that exposes the true, viewpoint-based motivation for the no-trespass order.

Defendants attempt to escape liability by suggesting a teacher's subjective discomfort with Plaintiff's presence or speech and a handful of staff complaints about his use of the word "groomer" are enough to remove his speech from First Amendment protection. Defendants repeatedly claim that they acted as a result of Plaintiff's "harassment" or vague "incitement." However, no such exception to the First Amendment exists, otherwise no one could criticize governmental officials because they would all claim such criticism amounts to "harassment." The only true exception Defendants could use to punish Mr. Pruitt's speech is if it amounted to a true threat. But there is no evidence for such a claim.

The true threats doctrine is a narrow, constitutionally defined exception for statements where "the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003).

There has never been an exception for speech that makes a government official feel offended, uncomfortable, or subjectively harassed. The Supreme Court held in *Counterman v. Colorado*, 600 U.S. 66 (2023) that even a purely objective reasonable-person standard is constitutionally insufficient. An action that punishes speech based solely on how it is received creates exactly the chilling effect the First Amendment is designed to prevent, because speakers will "swallow words that are in fact not true threats" rather than risk legal consequences. *Id*. at 78.

The Supreme Court has also long recognized that "the language of the political arena . . . is often vituperative, abusive, and inexact" — and has protected precisely such speech. *Watts v. United States*, 394 U.S. 705, 708 (1969). The accusation that teachers are ideological "groomers" is political rhetoric that may offend. Permitting a school to strip First Amendment protection from a parent's off-campus political speech whenever a staff member subjectively feels unnerved is patently unconstitutional. Those cases prohibit the government from becoming the arbiter of which political criticism is too unsettling to be spoken.

Defendants' response rests on a single, legally untenable proposition: that school administrators may impose a sweeping and indefinite no-trespass order on a parent because they disliked the parent's speech. That cannot be squared with the First Amendment or binding Court precedent that the government may not transform prevailing opinion into enforced conformity.

3

Moreover, Defendants' response barely acknowledges the most controlling authority in this case, *McElhaney v. Williams*, 81 F.4th 550 (6th Cir. 2023). Defendants never analyze *McElhaney*. They never attempt to distinguish it. They simply cite the case for an undisputed element of the retaliation standard and then proceed as if the core holding does not exist. This Court should not overlook what Defendants have chosen to ignore.

## I.   THIS IS A SPEECH RETALIATION CASE, NOT A SCHOOL SAFETY CASE.

Defendants urge the Court to evaluate this case against a backdrop of school shootings, political polarization, and administrative caution. That framing does not answer the dispositive legal question: whether Defendants imposed a district-wide no-trespass order because they disagreed with the content and viewpoint of Plaintiff's protected political speech.

What makes Defendants' silence on *McElhaney* especially telling is the factual and legal overlap. In *McElhaney*, the Sixth Circuit confronted a school official who took adverse action against a parent because of the parent's speech criticizing school conduct. The court held without qualification that "a school official may not retaliate against the parent for the content of his speech." *McElhaney*, 81 F.4th at 557, 559. This holding directly controls here.

Defendants make no effort to argue that *McElhaney's* holding is distinguishable or that the Sixth Circuit's reasoning does not apply to this case. A

4

party that cannot distinguish the most directly adverse binding authority has not met its burden of showing that Plaintiff lacks a likelihood of success on the merits.

Defendants further suggest that because Mr. Pruitt has continued to post on social media after the no-trespass order issued, no chilling effect on speech has occurred or can occur. This proves nothing. It is the logical equivalent of arguing that placing a man in a public stockade as punishment for his words causes no chilling effect on speech because he defiantly continues to shout those same words while shackled there. The fact that one person refuses to be silenced by retaliation does not mean the retaliation is constitutionally permissible — it means only that this particular person has chosen to bear the punishment rather than submit to it. Resilience in the face of government retaliation is not a waiver of constitutional rights and does not transform an unlawful punitive action into a lawful one.

Defendants' argument also commits a more fundamental error: it asks the Court to measure the chilling effect of a retaliatory no-trespass order solely by its subjective impact on the one parent courageous enough to hire a lawyer and fight back. That is precisely the wrong lens. "First Amendment chill typically constitutes the 'reason why the governmental imposition is invalid rather than ... the harm which entitles [a party] to challenge it.'" *Morrison v. Board of Educ. of Boyd County*, 521 F.3d 602, 609 (6th Cir. 2008). The First Amendment's protection against chilling effects is not designed only for those willing to become plaintiffs — it exists for

5

every parent and every citizen who watches what happens to Mr. Pruitt and quietly draws the lesson that public criticism of Defendants carries a price.

Every parent in the Grosse Pointe district who has learned that a father lost his ability to attend his own child's school events, had his photograph posted as a trespasser, and was threatened with arrest has received a message from Defendants as clear as any written policy: dissent at your peril. That systemic chill, visited upon the silent majority who will never file suit, is precisely the harm the First Amendment is designed to prevent, and it flows directly from Defendants' actions.

## II.   PLAINTIFF HAS DEMONSTRATED IRREPARABLE HARM.

Defendants argue that Plaintiff's 17-month delay and failure to violate the no-trespass order defeats his irreparable harm claim. "[I]f it is found that a constitutional right is being threatened or impaired, **a finding of irreparable injury <u>is mandated</u>**." *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001) (emphasis added). "The Supreme Court has unequivocally admonished that even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief." *Newsome v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989). Because this record establishes an unrefuted, **present and ongoing** First Amendment deprivation, the irreparable-harm finding is not discretionary—it is mandated.

Further, the no-trespass order is not a completed past act whose effects have dissipated. It remains fully operative. It applies "at all times and to all District

6

property," prohibits Plaintiff from entering any District campus without prior approval, and directs staff to "contact the police immediately" if he is observed on District property. The injury renews each day the order remains in place.

Defendants' delay argument also rests on a legal misunderstanding that cuts against them on the merits. Citing *Moms for Liberty-Wilson Cnty. v. Wilson Cnty. Bd. of Educ.*, 155 F.4th 499 (6th Cir. 2025), Defendants contend that the harm must be "likely, not remediable at final judgment, and immediate." Moreover, Defendants have refused to lift the order despite Plaintiff's pre-litigation formal written request.

When a constitutional deprivation is continuous and the defendant has affirmatively refused to cure it, the passage of time does not make the injury less immediate — it makes it more egregious.

Defendants' related argument that Plaintiff has never sought entry and been denied fares no better. It asks Mr. Pruitt to subject himself to the risk of arrest under MCL 750.552 merely to generate a more dramatic denial on the record. The First Amendment does not require citizens to become martyrs to challenge unconstitutional orders that threaten them. See *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298; 99 S. Ct. 2301 (1979) (When challenging unconstitutional actions, "it is not necessary that [the plaintiff] first expose himself to actual arrest or prosecution. . ."). The harm is present. The order is active. Nothing in the equitable doctrine of diligence requires more.

## CONCLUSION

For all the above reasons, Plaintiff respectfully requests that the Court grant

his motion and issue a preliminary injunction.

Respectfully submitted,

DATED: May 12, 2026.          **KALLMAN LEGAL GROUP, PLLC**

/s/ *Stephen P. Kallman*          /s/ *David A. Kallman*
By:  Stephen P. Kallman (P75622)     By:  David A. Kallman          (P34200)
Attorney for Plaintiff          Attorney for Plaintiff

8